Milton Ray ATKINS, Appellant,

v.

The STATE of Texas.

No. 528–96.

Court of Criminal Appeals of Texas,
En Banc.

May 7, 1997.

Opinion Granting Rehearing Sept. 24, 1997.

Tony Aninao, Houston, for appellant.

Kimberly Aperauch Stelter, Asst. District Attorney, Houston, Jeffrey L. Van Horn, Asst. State's Attorney, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was indicted in November 1992 for the felony offense of Possession of a Controlled Substance (cocaine), weighing less than twenty-eight grams, pursuant to Tex. Health & Safety Code Ann. § 481.115(b). He was found guilty by a jury and pled true to two enhancements paragraphs whereupon the trial judge sentenced him to thirty years confinement in Texas Department of Criminal Justice. The Fourteenth Court of Appeals affirmed the conviction. *Atkins v. State*, No. 14–93–00923–CR, 1996 WL 75885 (Tex.App.-Houston [14th Dist.] 1996, pet. granted). We granted review on ground two of appellant's petition for discretionary review.[1]

1. Appellant's second ground for review asserts    that "review should be granted where the con-

## I. PERTINENT FACTS

When appellant was arrested, an inventory search of his person yielded a crack pipe containing cocaine residue. During the State's voir dire examination, a hypothetical was used to elicit the views of the prospective jurors. Specifically, the following exchange took place:

> The [State]: ... If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that—
>
> The [defense]: Objection, Your Honor. He's trying to commit the jury to a specific fact situation.
>
> The Court: Overruled. . . .

After overruling the objection, the prosecutor inquired row by row as to whether each juror could follow the law and find appellant guilty of possession of cocaine if it were shown beyond a reasonable doubt that the crack pipe contained a residual amount of cocaine. As a result, several jurors were challenged for cause and dismissed.

## II. APPELLANT'S CONTENTIONS

Appellant contends that it was improper voir dire for the State to seek to commit a prospective juror on an issue of the case. He contends the State sought to commit the jurors on the issue of possession of a residual amount of cocaine by using a hypothetical containing the identical facts of the case. He maintains that the State is not allowed to use hypotheticals based on the facts of the case to be submitted to the jury and that the court should not allow questions "designed to bring out the prospective juror's views on the

case and the facts about to be tried." *Cadoree v. State*, 810 S.W.2d 786 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

Appellant complains that the prosecutor's use of a hypothetical *specifically* about residue in a crack pipe was improper and exceeded the proper scope of the use of a hypothetical. He claims it was an effort by the prosecutor to commit the jurors to a verdict of guilty based upon the specific facts of the case before hearing the evidence. For these reasons, appellant asserts that the ground should be sustained and the case reversed and retried.

## III. STATE'S CONTENTIONS

The State maintains that the hypothetical used by the prosecutor was an attempt to ascertain whether the prospective jurors had a bias or prejudice against an aspect of the law applicable to the case. It insists that the prosecutor was trying to determine whether any of the jurors had reservations about convicting someone for possession of a very residual amount of cocaine. Citing to *Smith v. State*, 703 S.W.2d 641 (Tex.Crim.App. 1985), the State claims the question was proper in order to achieve this goal. In *Smith* it was held that a question is proper if it seeks to discover a juror's views on an issue applicable to the case. In this case several jurors admitted in response to the State's inquiry that they would not be able to follow the law and convict someone for a residual amount of cocaine. The record reveals that those jurors were struck for cause because they could not follow the law. The State propounds that this is not improper voir dire, but is the purpose of voir dire.

## IV. COURT OF APPEALS DECISION

The Fourteenth Court of Appeals held that the hypothetical used by the prosecutor dur-

---

clusion of the court of appeals that it was proper for the trial court to overrule the appellant's objection to the State's jury voir dire hypothetical using the identical facts adduced at trial of residue in a crack pipe, directly conflicts with well established case authority from this Court."

However, in appellant's brief filed after the petition, he changed the wording of the ground to assert that the "trial court committed reversible error in overruling the appellant's objection when the prosecutor attempted to insure a verdict of guilty by using a hypothetical situation

regarding a residue of crack cocaine in a crack pipe, which was identical and specific to the facts of the instant case involving a residue of crack cocaine recovered in a crack pipe, and then requested of the jurors to vote and commit themselves to a specific and particular result or outcome." As a reviewing Court, we are obligated to review the actions of the court of appeals, except where appeal is automatic (death penalty cases). Thus, we will address the issue for which we granted review since it concerns the court of appeals' decision.

ing voir dire was not improper. The court pointed out that a question on voir dire is "proper if its purpose is to discover a juror's view on an issue applicable to the case." *Atkins*, No. 14–93–00923–CR, slip op. at 6, citing *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex.Crim.App.1990) and *Henry v. State*, 800 S.W.2d 612, 616 (Tex.App.—Houston [14th Dist.] 1990, no pet.). The court further asserted that "a hypothetical used as a voir dire question may be similar to the facts of the case." *Id.* The court of appeals affirmed the judgment of the trial court finding that the prosecutor's hypothetical was not improper and did not exceed the scope of voir dire.

## V. ANALYSIS

Appellant's second ground for review asserts that "review should be granted where the conclusion of the court of appeals that it was proper for the trial court to overrule the appellant's objection to the State's jury voir dire hypothetical using the identical facts adduced at trial of residue in a crack pipe, directly conflicts with well established case authority from this Court." Since appellant asserts a conflict between the law of this Court and the law relied upon by the court of appeals, a review of this Court's cases concerning the use of hypotheticals is necessary.

The use of fact specific hypotheticals was presented before this Court in *White v. State* and it was held that "there was no error in refusing to let the appellant ask a hypothetical question that was based on the facts peculiar to the case on trial." *White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982). This holding was refined in *Cuevas v. State* when the Court held the use of a hypothetical fact situation during voir dire is permissible if it is used "to explain the application of the law. However, it is improper to inquire how a venireman would respond to particular circumstances as presented in a hypothetical question." *Cuevas v. State*, 742 S.W.2d 331, 336 n. 6 (Tex. Crim.App.1987). Several years later, this Court held the use of a hypothetical regarding the victim's status as a child was not an improper question because it sought to ascer-

tain potential bias. *Maddux v. State*, 862 S.W.2d 590 (Tex.Crim.App.1993).

▇▇▇ In the case at bar, the prosecutor used a hypothetical which contained facts similar to those presented in the case. Because the law allows the use of a hypothetical to ascertain the views of the prospective jurors on issues pertinent to a fair determination of the case, it must be determined whether the hypothetical was used to explain the law or was used to commit the jurors to particular circumstances. During voir dire the prosecutor asked, " ... If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, **is there anyone who could not convict a person, based on that—**." [emphasis added] Appellant objected on the basis that the State was trying to commit the jury to a specific fact situation and the court overruled the objection.

By asking the veniremembers if they could convict based on the hypothetical given, the State was not explaining the law, but was seeking to commit the venire to a particular set of facts. The State inquired row by row asking the same question in different form. On one occasion it was asked, "Is there anybody who would be unable to convict somebody for possession of a residue amount of cocaine, ..." On another occasion it was asked, " ... Is there anyone who would be unable to convict in this type of circumstance?" This type of questioning, using a hypothetical or otherwise, is improper and serves no purpose other than to commit the jury to specific set of facts prior to the presentation of any evidence at trial.

▇▇▇ The State argues it used the fact specific hypothetical to explain the law as it pertains to possession of less than twenty-eight grams of cocaine and tried to determine if the jurors could apply the law to a residual amount. This assertion is supported by the record. For example, after the initial objection by defense counsel the State explained,

"Certainly a residue amount is not as much of an amount as, let's say, a usable quanti-

ty. But under the eyes of the law—and the legislature has said, it doesn't matter how much cocaine it is, if it can be seen and it can be measured, that's possession of cocaine; and if it's proven, the person can be found guilty. **Can you follow a law that says a person can be found guilty of possessing a residue amount?**" [emphasis added]

However, this line of questioning occurred after the initial objection by defense counsel and does not excuse the improper question in which the hypothetical was used seeking to commit the veniremembers to the specific facts of the case. As a result of the improper question and the responses given by specific veniremembers, the State was able to challenge several jurors for cause and the jurors were dismissed. Just as the denial of a proper question by the trial court represents an abuse of discretion, *Maddux, supra,* so should the allowance of an improper question.

■ The court of appeals based its opinion on our holding in *Shipley v. State,* 790 S.W.2d 604 (Tex.Crim.App.1990). In *Shipley,* we held that control of the voir dire examination is within the sound discretion of the trial judge and that the trial judge is given wide discretion in this area. Although this is true, a trial judge must not exceed his discretion by denying a proper question or allowing an improper question. And in a case such as this, a trial judge must determine if the hypothetical is used to explain the law or to commit the venire to specific facts of the case. To find that the question was used for anything other than to explain the law would be an abuse of discretion and would constitute reversible error.

## VI. CONCLUSION

In conclusion, the court of appeals was incorrect in asserting that the trial court did not abuse its discretion in overruling appellant's objection to the State's voir dire hypothetical because we have determined that the State used a hypothetical question to commit the veniremembers to the facts of the case. Therefore, the judgment of the court of appeals is reversed and the cause is remanded to the trial court.

KELLER, Judge, dissenting.

Appellant was indicted for the offense of possession of cocaine weighing less than twenty-eight grams. The State questioned prospective jurors regarding their ability to follow the law requiring conviction of that offense even if the defendant possessed only minute amounts of the contraband. The majority holds this questioning to be an improper attempt to commit jurors to convict based upon the specific facts of the case. Because I believe the questions merely committed jurors to follow the law, I disagree with the majority's disposition.

### 1. The Facts

To convey properly the context in which the State's questions were asked, I present the portion of the voir dire relevant to the issue:

MR. STRADLEY [prosecutor]: We have to prove that the amount of cocaine in this case, is less than twenty-eight grams.

You'll notice, we don't have to prove that it's two grams or more, and less than twenty-eight, or one gram or more. We have to prove that it's less than twenty-eight grams.

So basically, what that means is, if a person is in possession of even a residue amount of cocaine, that that still, under the eyes of the law, is possession of cocaine.

Is there anybody ever heard of a cocaine case or somebody being tried of a cocaine case when we're talking about a residue amount of cocaine? Anybody ever heard of that? Anybody?

Sergeant, you've heard of that, haven't you?

JUROR: Yes.

MR. STRADLEY: Have you ever made an arrest on that type of case?

JUROR: No.

MR. STRADLEY: What division of the police department do you work?

JUROR: Airport. I've made cocaine arrests, but not residue.

MR. STRADLEY: Generally larger amounts?

JUROR: We get varieties.

MR. STRADLEY: Does that concern anybody, that a person can be tried for a residue amount of cocaine?

Is there anybody who would say that, I couldn't convict somebody for a residue amount of cocaine? And if you feel that way, that's fine. We just need to know about it.

Can you imagine any fact scenario where a person might be found to have residue cocaine on them?

JUROR: What is a residue?

MR. STRADLEY: Residue amount is a very small amount, or basically, what's left.

JUROR: I didn't know what residue meant.

MR. STRADLEY: Residue is an amount that cannot be used to get a person high, or whatever you want to call it. But it's still a measurable amount that you can see, a trace amount, if you will.

Does everybody understand that? Has anyone ever heard of crack cocaine before?

Has everyone heard of that?

Everyone over here has heard of crack cocaine?

Is there anyone here who has not heard of crack cocaine?

All right. Does anybody know how a person uses crack cocaine?

Mr. Wakim?

JUROR: Use a pipe.

MR. STRADLEY: Use a pipe.

Okay. Have you seen that on TV; or have you just heard about it?

JUROR: I've seen it in person and TV.

MR. STRADLEY: You've seen it in person? When was that?

JUROR: When I was living in California.

MR. STRADLEY: What does a crack pipe look like?

JUROR: It's made out of glass. It's got a long stem on top.

MR. STRADLEY: Did you know that sometimes when a person uses a crack pipe, that after the crack is used, there's a residue amount left in the crack pipe?

JUROR: I'm aware of that.

MR. STRADLEY: Is everybody aware of that?

Does every body know what a crack pipe is, now that Mr. Wakim has explained it?

When somebody uses cocaine—it's a crack-like substance. You put it in a pipe and you smoke it instead of snorting it up your nose like a powder. After it's been smoked out of a crack pipe, generally, there's residue left in the crack pipe. So that is a situation where you have a trace amount of cocaine, what is left over in the crack pipe.

Anybody have any concerns or questions about that?

So when a person is arrested, and they have in their possession, a crack pipe, with a residue amount in it, the State—we can show that the defendant intentionally or knowingly knew that that cocaine was there, the State can bring a case of possession of a controlled substance, less than twenty-eight grams.

*If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that—*

[DEFENSE COUNSEL]: *Objection, Your Honor. He's trying to commit the jury to a specific fact situation.*

THE COURT: *Overruled.* [Comments about amount of time the case will take].

MR. STRADLEY: Is there anybody who would be unable to convict somebody for possession of a residue amount of cocaine, in a situation where they had it in a crack pipe?

Mr. Winslett, No. 3?

JUROR: I don't understand how residue would be as substantial as having the actual—

MR. STRADLEY: *Certainly a residue amount is not as much of an amount as, let's say, a usable quantity. But under the eyes of the law—and the legislature has said, it doesn't matter how much cocaine it is, if it can be seen and it can be measured, that's possession of cocaine;*

*and if it's proven, the person can be found guilty.*

*Can you follow a law that says a person can be found guilty of possessing a residue amount?*

THE COURT: Let's assume that it's proven beyond a reasonable doubt that it's a controlled substance, that it's in Harris County, less than twenty-eight grams.

You have to assume that the evidence has been proven to you before you find them guilty, under a hypothetical.

MR. STRADLEY: Would you be able to follow the law?

JUROR: I think it would have a lot to do with the circumstances.

MR. STRADLEY: Assuming that all the elements are proven beyond a reasonable doubt.

I'm trying to have you assume that.

Would you be able to follow the law, is the question.

JUROR: I would say that would still be determined by the circumstances.

MR. STRADLEY: Let's assume the circumstances proved beyond a reasonable doubt that the person knowingly possessed a residue amount of crack, inside of a crack pipe, hypothetically, and you believe that to be true, and you believe that to be a residue amount. Would you be able to find a person guilty.

JUROR: I don't think that I would.

MR. STRADLEY: You would not?

JUROR: I don't think I would.

THE COURT: Mark the number down, and let's move on.

MR. STRADLEY: Is there anyone else on the first row that feels that way?

And it's all right if you feel that way. Everyone has a right to feel any way they want to.

Ms. Goldy, would you be able to convict in a circumstance like that?

JUROR: I don't think so.

MR. STRADLEY: You would not be able to?

JUROR: No, I don't think so.

MR. STRADLEY: Is there anyone else on the first row? Mr. Pittman?

JUROR: That's right.

MR. STRADLEY: Mr. Pittman, did you just shake your head saying that you could not follow the law?

JUROR: No, I don't think I could convict on something like that.

MR. STRADLEY: Everybody else on the first row okay with this?

Mr. Hamel, Juror No. 6, you're an attorney yourself.

[Discussion with Juror No. 6 about his profession].

MR. STRADLEY: Is there anyone else in the second row, including everybody up to here, who would be unable to convict a person for a residue amount of cocaine?

Ms.—

JUROR: Isenhour.

MR. STRADLEY: Anybody else in the second row?

Ms. Ozuna, would you be able to convict someone on a residue amount of cocaine?

JUROR: I don't think I could.

THE COURT: Ask the question, counsel, if they could follow the law, if you prove the case beyond a reasonable doubt.

It makes a difference how much it is. You can say that too.

I want to make sure these people can follow the law.

MR. STRADLEY: Ms. Ozuna, if the case is proven beyond a reasonable doubt that the person should be found guilty by a jury, would you be able to follow the law if we proved all this to you?

JUROR: For residue?

MR. STRADLEY: Yes.

JUROR: I don't think so. I don't think I could.

MR. STRADLEY: You couldn't?

JUROR: No.

MR. STRADLEY: Mr. Moser, do you have any feelings on that.

JUROR: If it's the law, then, yes.

MR. STRADLEY: Anybody else on the second row?

Is there anybody who would be unable to convict someone for a residue amount?

JUROR: Ms. Lou Ella Wiltz.

MR. STRADLEY: Ms. Wiltz, you would not follow the law, then, if we proved it, beyond a reasonable doubt?

JUROR: Right.

MR. STRADLEY: Thank you.

Is there anyone else on the second row, other than Ms. Isenhour?

JUROR: Isenhour.

MR. STRADLEY: Is that correct? You would be unable to follow the law if it was a residue amount?

JUROR: Yes.

MR. STRADLEY: Anyone on the third row who would be unable to follow the law?

If we proved that a person was in possession of cocaine, beyond a reasonable doubt, would you still be unable to find that person guilty?

Anybody else on the third row?

Mr. Webster, would you be able to do that?

JUROR: Yes.

MR. STRADLEY: Anybody on the third row, on the right-hand side of the room, starting with Ms. Kelly?

Is there anyone who would be unable to follow the law in this type of case. I take it from your silence that you could follow the law. Is that correct?

Ms. Nixon—

JUROR: Yes.

MR. STRADLEY:—Ms. Johnson?

JUROR: Yes.

MR. STRADLEY: Anybody on the last row, if we prove this case to you, beyond a reasonable doubt, in a hypothetical case, that a person is in possession of a residue amount of cocaine, can you follow the law?

JUROR: No.

MR. STRADLEY: Yes, ma'am.

JUROR: No.

MR. STRADLEY: Anybody else on the last row? Ms. Phillips?

JUROR: No.

MR. STRADLEY: Starting with Vandegarde, on, can everybody follow the law in this circumstance, if it's proven?

Ms. Bornman?

Is it Ms. Alexander? Is your name Ms. Alexander.

JUROR: Yes.

MR. STRADLEY: You were saying, if it's proven.

JUROR: Only if it's proven.

MR. STRADLEY: Anybody else on the fourth row?

Is there anyone who would be unable to convict in this type of circumstance?

Mr. Hatcher, if we prove the case beyond a reasonable doubt, and it was a small residue amount, can you find the person guilty.

JUROR: Yes.

MR. STRADLEY: Is there anyone over here, starting with No. 43—is there anyone who would be unable to convict in a residue case?

I take it, then from your silence, that you could do it, you could convict somebody on a residue case.

JUROR: (Juror nods.)

MR. STRADLEY: Mr. Jones, would you be able to convict somebody on a residue case?

JUROR: (Juror nods).

MR. STRADLEY: Is your answer no? I've got to get it for the record.

JUROR: No.

MR. STRADLEY: Is there anyone on the last row, anyone that would be unable to convict somebody if the evidence showed that they were guilty of possessing a residue amount?

I take it from your silence, you would be able to follow the law.

Mr. Salas, you could follow the law?

JUROR: Yes.

(Emphasis added; bracketed material substituted for original).

While the above discussion is rather lengthy, I include it here to illuminate several facts that may not be apparent from reading the majority opinion. First, the complained-of question regarding cocaine residue in a crack pipe was *preceded* by a discussion about meaning of the cocaine law. The pros-

ecutor explained that the crime of possession of less than twenty-eight grams of cocaine encompassed even a residue amount of cocaine. Second, the crack pipe element of the question had already been previously discussed to explain the residue amount concept, i.e. by showing how possession of a residue amount might be established. Third, the later question about "following the law," described by the majority as being proper, *preceded* virtually all of the row-by-row questioning regarding the residue amount topic. This "follow the law" question was an immediate response to a question from Juror No. 3, the first juror to react to the earlier objected-to question. Fourth, the voir dire is littered with references to "following the law" in connection with the residue amount question, and the prosecutor explained that his questioning assumed that the State had proven knowing possession of the residue beyond a reasonable doubt. Finally, the focus of the row-by-row questioning of prospective jurors was on the small quantity of cocaine hypothesized, not on the fact that the residue was found in a crack pipe or that the crack pipe was found in an arrested person's pocket. With these observations in mind, I turn now to the issue before us.

## 2. Propriety of the Question

The appellate standard of review that generally applies to a trial court's actions in voir dire is abuse of discretion. *Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App.1988)(complaint that prosecutor referred to an improper theory of conviction during voir dire). An abuse of discretion occurs when the trial court refuses to permit a party to ask a proper question. *Nunfio v. State,* 808 S.W.2d 482, 484 (Tex. Crim.App.1991). As the majority notes, permitting an *improper* question would logically also be an abuse of discretion. Because refusing a proper question or allowing an improper question constitutes, *ipso facto,* an abuse of discretion, the trial court's discretion must necessarily lie in determining *whether* the question is in fact a proper or improper question. *See Rhoades v. State,* 934 S.W.2d 113, 118–119 (Tex.Crim.App.1996)(plurality opinion)("the reviewing court must analyze the claim under

an abuse of discretion standard, the focus of which is whether the appellant proffered a proper question"). Otherwise, use of the term "abuse of discretion" in connection with voir dire questions is meaningless. I am of the opinion, however, that appellate courts should not conduct a *de novo* review of the various questions asked by the parties to determine whether those questions are proper or improper. Instead, the trial court should be given broad discretion to determine whether the particular question complained of was proper or improper in the context of the particular voir dire. Appellate courts should not look at questions in isolation but should examine the surrounding context in which they appear, and the trial court's decision should be upheld if there is support in the record for interpreting or characterizing the question in a manner consistent with the trial court's ruling. *See Rachal v. State,* 917 S.W.2d 799, 810 (Tex.Crim. App.1996), *cert. denied,* — U.S. —, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996)(trial court in superior position to evaluate "the context and tone in which questions are asked and answered during voir dire").

In isolation, a hypothetical question that asks whether a juror can convict a person who was arrested with a crack pipe in his pocket containing a residue amount of cocaine would appear to be an attempt to commit the venire to convicting upon a certain set of facts. Those facts would be: (1) arrest, (2) with a crack pipe, (3) found in his pocket, (4) containing a residue amount of cocaine. But an examination of the surrounding discussion shows that the trial court could have concluded that these facts were merely used for illustration and that the State's question merely sought to commit the venire to following the law that holds minute amounts of cocaine to be within the definition of "cocaine weighing less than twenty-eight grams."

To be sure, the prosecutor repeatedly asked whether prospective jurors could "convict" on the basis of a residue amount. A "residue amount" might be characterized as a *specific fact* to which the State was attempting to commit the jurors to convict upon. But elements of the offense are neces-

sarily facts of a sort; the State is nevertheless entitled to know whether prospective jurors will convict if the elements of the offense are proven beyond a reasonable doubt. For example, whether someone's blood alcohol level is .10 might be characterized as a specific fact in a criminal case, but it is also an element of the offense of driving while intoxicated. *See* Texas Penal Code §§ 49.01(2)(B) & 49.04(a). A prospective juror who cannot convict on the basis of .10 blood alcohol when that is an element of the offense is challengeable for cause, and the State has the right to elicit such information. Another example is the law of parties. In a capital murder case, a defendant's status as a "non-triggerperson" could be characterized as a specific fact of the case. However, by definition, non-triggerperson status is an element of the law of parties as it would apply in a capital murder prosecution, and a prospective juror who cannot convict a nontriggerperson, where the State has proven him liable as a party beyond a reasonable doubt, is challengeable for cause. *See Nichols v. State*, 754 S.W.2d 185, 196 (Tex.Crim. App.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989), *overruled on other grounds by, Green v. State*, 764 S.W.2d 242, 247 n. 2 (Tex.Crim.App.1989), *Harris v. State*, 784 S.W.2d 5, 19 (Tex.Crim. App.1989), and *Butler v. State*, 830 S.W.2d 125, 130 (Tex.Crim.App.1992). The State is surely permitted to question prospective jurors about their ability to convict non-triggerpersons upon proof of liability under the law of parties.

By criticizing the "convict" phraseology, the majority would perhaps require the hypothetical .10 question "Can you convict on the basis of a .10 blood alcohol level proven beyond a reasonable doubt" to be divided into two questions: (1) "Can you follow the law which requires a conviction if the State proves the elements of the offense beyond a reasonable doubt," and (2) "Can you follow the law which defines .10 blood alcohol level as an element of the offense." There is, of course, no real difference between the first question, and the second two questions. While the form of a question may well be important in many circumstances, requiring such sophisticated maneuvering as outlined above needlessly exalts form over substance.

Moreover, our rule against factual commitment questions is designed to maintain juror impartiality and open-mindedness in evaluating the evidence. These purposes are most threatened when the questions relate to issues upon which rational jurors can disagree; they are least threatened when the questions relate to matters that jurors are required to accept by law. Not surprisingly, almost every case in which a question has been held to be an improper attempt to commit prospective jurors to specific facts involves an attempt to evaluate the impact of various facts on punishment deliberations: for example, whether particular circumstances have mitigating value, *see Rhoades*, 934 S.W.2d at 122–123, *Garcia v. State*, 919 S.W.2d 370, 399–400 (Tex.Crim.App.1994)(plurality opinion), and *Coleman v. State*, 881 S.W.2d 344, 350–351 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995); whether the impact of a crime on the victim's family would prevent a juror from imposing a life sentence, *Penry v. State*, 903 S.W.2d 715, 739–740 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); whether a juror could assess life imprisonment "if it were proved that the defendant went into a store, 'attempted to rob it or robbed it,' aimed a pistol at a woman's head at short range and shot her, killing her instantly, and if the woman's husband testified to that," *White v. State*, 629 S.W.2d 701, 706 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); whether a juror could assess the minimum punishment of five years under certain described facts, *Williams v. State*, 481 S.W.2d 119, 120–121 (Tex.Crim. App.1972); and questions asking prospective jurors under what circumstances they would impose the death penalty, *Dinkins v. State*, 894 S.W.2d 330, 346–347 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995), *Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993), and *Allridge v. State*, 762 S.W.2d 146, 163–164 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

I do not mean to suggest that the rule against specific commitment questions applies only to punishment issues. Punishment issues (e.g. range of punishment, future dangerousness, mitigating circumstances) lend themselves more often than guilt/innocence issues to normative considerations or to drawing inductive inferences from specific facts. Jurors should be given a wide berth in making normative or inferential judgments, whether they relate to guilt or punishment, and the courts appropriately restrain parties who attempt to impose their own normative or inferential judgments upon jurors before evidence is even presented. But some questions involve purely legal judgments. Jurors are not free to determine the elements of an offense for themselves—the law defines those elements. Parties should have much more lattitude in asking questions that relate to legal definitions and matters imposed upon a jury by law.

Nevertheless, parties should not be permitted to add facts gratuitously to questions involving legal definitions and attempt to commit jurors, not merely to the legal definition, but to a surrounding fact scenario as well. But under the current record, the trial court could have rationally concluded that any facts beyond the "amount" issue were given by the prosecutor and understood by the venire as merely for illustrative purposes. Hence, I believe the trial court was within its discretion to overrule appellant's objection to the prosecutor's question.

### 3. Harm

However, even if the objected-to question were analyzed in isolation, the surrounding voir dire would still be relevant to a harm analysis under Tex.R.App. P. 81(b)(2). The majority opinion appears to either dispense with a harmless error analysis or implicitly conduct one itself. But errors involving improper prosecutorial questions or statements to the venire have traditionally been subject to a harm analysis. *Clark v. State,* 881 S.W.2d 682, 692 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1156, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995); *Jackson v. State,* 822 S.W.2d 18, 25–26 (Tex.Crim.App.1990)(plurality opinion), *cert. denied,* 509 U.S. 921, 113 S.Ct. 3034, 125 L.Ed.2d 722 (1993). Moreover, while I have advocated conducting a harmless error analysis ourselves under some circumstances, this Court has rejected my position and, at least in general, maintains that the harmlessness of an error should always be addressed by the Court of Appeals in the first instance. *See Lopez v. State,* 928 S.W.2d 528, 535 (Tex.Crim.App.1996)(plurality opinion); *Id.* at 535 (Baird, J. concurring); *Id.* at 539–540 (Keller, J. concurring and dissenting). Even if this case were not affirmed, it should at least be remanded to the Court of Appeals for further proceedings.[1]

However, because I believe the trial court was within its discretion in permitting the prosecutor's residue amount question, I would affirm the judgment of the Court of Appeals. I respectfully dissent.

McCORMICK, P.J., and MANSFIELD, J., join this opinion.

### OPINION ON STATE'S MOTION FOR REHEARING

KELLER, Judge.

Appellant was indicted for the offense of possession of cocaine weighing less than twenty-eight grams. The Court of Appeals affirmed the conviction. Holding that the prosecutor asked questions that attempted to improperly commit members of the venire to the specific facts of the case, we reversed the conviction and remanded the case to the trial court. *Atkins v. State,* 951 S.W.2d 787 (Tex. Crim.App.1997). In the second ground of its

---

1. Another possible subject of remand is whether the error was properly preserved. As the majority notes, extensive row-by-row questioning on the residue amount issue occurred, but appellant objected to only one question and did not obtain a running objection. Absent a running objection, this error may not have been properly preserved for review. *Ethington v. State,* 819 S.W.2d 854, 858–860 (Tex.Crim.App.1991). The Court of Appeals could choose to review the issue on remand because preservation of error is a systemic requirement that a Court of Appeals is authorized to review on its own motion. *See Hughes v. State,* 878 S.W.2d 142, 151 (Tex.Crim.App.1992); *Fuller v. State,* 829 S.W.2d 191, 199 n. 4 (Tex.Crim.App.1992)(plurality opinion), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993).

motion for rehearing, the State contends that this cause should be remanded to the Court of Appeals for a harm analysis. We agree. In *Cain v. State*, 947 S.W.2d 262 (Tex.Crim. App.1997), we held that all errors, except certain federal constitutional errors deemed "structural," are subject to a harm analysis. *Id.* at 264. Moreover, similar voir dire errors have traditionally been subject to a harm analysis. *Clark v. State*, 881 S.W.2d 682, 692 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1156, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995).

We grant the State's second ground for rehearing and remand this cause to the Court of Appeals to conduct a harmless error analysis. All other grounds for rehearing are denied.

OVERSTREET, J., dissents.

BAIRD, Judge, dissenting.

On original submission, we found the trial judge abused his discretion in permitting the State to ask an improper question. *Ante* at 789. We also found that as a result of the responses to the improper question the State was able to successfully challenge several veniremembers for cause. *Ibid.* We then stated: "Just as the denial of a proper question by the trial court represents an abuse of discretion, so should the allowance of an improper question." *Ibid.* (Citation omitted.) In reaching this conclusion we cited *Maddux v. State*, 862 S.W.2d 590, 592 (Tex.Cr.App. 1993), which in turn cited *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex.Cr.App.1991).

Both *Maddux* and *Nunfio* stand for the proposition that when the trial judge errs in preventing the defense from asking a proper question, the error is not subject to a harm analysis and is always reversible error. However, neither *Maddux* nor *Nunfio* is applicable because the instant error was in *permitting* the State to ask an *improper* question rather than *preventing* the defendant from asking a *proper* question. Instead, the correct analysis was stated in *Pay-*

*ton v. State*, 572 S.W.2d 677 (Tex.Cr.App. 1978). In noncapital cases, when a State's challenge for cause was erroneously granted, the next step is to determine if the State used all of its peremptory challenges. If the State used its peremptory challenges, appellant was harmed.

In its motion for rehearing the State contends "this case should be remanded for a harm analysis, *or this Court itself should determine that there was no harm.*" State's motion for rehearing, pg. 6.[1] In cases where we can determine whether the State exhausted its peremptory challenges, there is no need to remand the case to the court of appeals to perform the harm analysis. *Zinger v. State*, 932 S.W.2d 511, 514 (Tex.Cr.App. 1996). This is such a case; the State used its ten peremptory challenges. TR. vol. I, pg. 49. Therefore, the error in the instant case is reversible error. Accordingly, I dissent to the decision to remand this case to the Court of Appeals.

---

1. This is an exact quote from the State's motion. The majority misstates the ground for rehearing by omitting the italicized portion. *Ante* at 787.