Jack **PAUSTIAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–97–00361–CR.

Court of Appeals of Texas, El Paso.

April 29, 1999.

Thomas S. Morgan, Midland, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Jane Lundy Belazi, Asst. Dist. Atty., Midland, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

Jack Paustian appeals his conviction for driving while intoxicated. He was sentenced to forty (40) days confinement in the Midland County Jail and his driver's license was suspended until January 10, 1998.

### *SUMMARY OF THE EVIDENCE*

On November 23, 1994, Patrick Mayers, a police officer with the City of Midland, was on patrol when he received a radio dispatch concerning a possible intoxicated driver operating a red and white Dodge pickup. Officer Mayers responded to the call by driving to an area near Eisenhower Boulevard and Highway 80. As he approached the area within several minutes of receiving the dispatch, Officer Mayers saw the nose of a red and white Dodge pickup truck in a drainage ditch. The rear wheels of the pickup truck were suspended off the ground. Officer Mayers saw Paustian standing at the rear quarter panel of the pickup. Officers Partin and Hiner of the Midland Police Department were already at the accident scene. Officer Mayers asked Paustian what happened to his truck. Paustian replied, "I drove it there."

Officer Mayers smelled a strong odor of alcohol on Paustian's breath. Officer Mayers noticed that Paustian was unable to stand without leaning on his truck and his speech was extremely slurred. Paustian also failed the horizontal gaze nystagmus

test. No other field sobriety tests were performed because in Officer Mayers' opinion, "Mr. Paustian was extremely intoxicated and could not perform the other standardized field sobriety tests." Paustian was arrested, and later tried and convicted. This appeal follows.

### DISCUSSION

#### Improper Voir Dire

■ In his first point of error, Paustian contends that the State impermissibly contracted with the jury during voir dire by asserting facts particular to the case. During voir dire, the following exchange took place:

[Ms. Belazi]: Now if in a situation evidence shows you that a call has come out of a person driving in a specific vehicle, and a few minutes later you—

[Mr. Morgan]: I object, Your Honor, to any kind of specifics like this to the jury panel.

[The Court]: Overruled.

[Mr. Morgan]: Including a statement being made by Ms. Belazi.

[The Court]: Don't be too specific, but go ahead. You may generally state what you—

[Ms. Belazi]: But if shortly thereafter a police officer arrives in the vicinity and a person is standing right by that vehicle, and they admit that they were the one that drove that vehicle, that's circumstantial evidence that that person was driving that vehicle.

[Mr. Morgan]: I'm going to object, Your Honor. That is a statement. That is not a question to the jury. That goes into specifics. This is improper voir dire.

[The Court]: Overruled.

[Ms. Belazi]: This is an example of a circumstantial situation. Wouldn't it be reasonable in your minds to assume that the man standing beside the car that was just called in and admitted that he had been driving—would it be unreason-

able to assume—wouldn't it be reasonable for y'all to assume, in fact, that is the person that was driving that vehicle, assuming nobody else was around that vehicle except that person? Does anybody think that would be unreasonable?

[Mr. Morgan]: Same objection just so I don't waive anything.

[The Court]: Thank you, Mr. Morgan. Overruled.

[Ms. Belazi]: All right. Can you understand that would be an example of circumstantial evidence? Does anybody think that it would be—who feels that would be a reasonable deduction from the evidence? Mr. Dannels, do you feel that would be a reasonable deduction from the evidence?

[Prospective Juror]: If that's all the facts. I don't—that would be reasonable. But it's hard for me to tell if that's all the facts or not.

[Ms. Belazi]: Okay. But assuming that you had that situation where the police arrived shortly after a car has run off the road, the guy is standing out beside his car, he says, 'Yeah, I was driving,' the officer says there was nobody else there. Would it be reasonable for you to assume that he was driving it?

[Mr. Morgan]: Your Honor, same objection. Especially Coleman versus State is the case.

[The Court]: Overruled.

[Ms. Belazi]: Mr. Dozier, would it be reasonable for you to assume he was the driver?

[Prospective Juror]: Yes, since he admitted it, yes.

[Ms. Belazi]: Mr. Teinert, do you think that would be reasonable?

■ While it is proper to use hypothetical fact situations to explain the application of the law, it is not proper to inquire how a venireperson would respond to particular circumstances presented in a hypo-

thetical question.[1] Although it is proper to question juror's views and sentiments on social and moral subjects generally, the courts do not permit a hypothetical case to be submitted, nor do they allow questions designed to bring out the juror's views on the case to be tried.[2] By asking the veniremembers if it was reasonable to assume that the man next to the car was the driver, the State was not explaining the law, but was seeking to commit the venire to a particular set of facts.[3] *Every veniremember who ultimately served on the jury was asked individually the same question by the State.* This type of questioning, using a hypothetical or otherwise, is improper and serves no purpose other than to commit the jury to a specific set of facts prior to the presentation of any evidence at trial.[4]

### Harm Analysis

■ Having found error, we must now conduct a harm analysis.[5] We will review this error under Texas Rule of Appellate Procedure 44.2(b).[6] Texas Rule of Appellate Procedure 44.2(b) provides little guidance in assessing what affects a substantial right.[7] The Court of Criminal Appeals has interpreted it as requiring a substantial and injurious effect or influence on the jury's verdict.[8] Factors that are useful in conducting this analysis include: (1) the quantum of evidence appearing of record and supporting the jury's decision; and (2) the emphasis placed upon the improper conduct or, stated different-

ly, the number of times the State stressed the improper comment or evidence.[9]

■ Although previously applied in analyzing error in the admission of evidence, we also find the factors outlined in *Garza v. State*[10] helpful in conducting our harm analysis. We therefore consider: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the probable collateral consequences of the error; (5) how much weight jurors probably placed on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity.[11]

We find ourselves here in the same situation that this court faced in *Richardson v. State*,[12] when we wrote:

> The denial of the right to a jury shuffle, *as is true of any jury selection error,* does not lend itself to this particular analysis because the impact of the error is not easily related to the jury's verdict. This fact is implicitly recognized in prior decisions which instead inquire whether non-compliance with certain jury selection procedures compromised the fairness of the defendant's trial.... Thus, we conclude that in order to show harm under Rule 44.2(b), the record must establish that denial of a jury shuffle denied the defendant a fair and impartial jury or otherwise compromised the fairness of his trial.[13]

1. *Montes v. State*, 870 S.W.2d 643, 645 (Tex. App.—El Paso 1994, no pet.).

2. *Id.*

3. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim.App.1997).

4. *Id.*

5. *Id.* at 796–97 (opin. on reh'g).

6. *Richardson v. State*, 981 S.W.2d 453, 456 (Tex.App.—El Paso 1998, pet. ref'd).

7. *Brown v. State*, 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. ref'd).

8. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

9. *Id.* at 271–73.

10. *Garza v. State*, 963 S.W.2d 926, 929–30 (Tex.App.—San Antonio 1998, no pet.).

11. *Id.* at 930.

12. *Richardson*, 981 S.W.2d at 457.

13. *Id.* (emphasis added) (internal citations omitted).

The present situation facing Paustian is even more complicated than the case involving Richardson. First, the State reinforced the error by contracting with every person who ultimately served as a juror. Second, the State's hypothetical contracted away the need to prove the only disputed element of the offense, namely driving. Third, the State's hypothetical included defendant's admission that he was driving into its improper contracting on circumstantial evidence. We therefore cannot consider the admission as independent evidence supporting the conviction. It was, rather, a factor in the improper contract.

We find that the additional *Garza* factors weigh strongly in favor of the defendant. The State was the source of the error. The nature of the error, contracting, is inherently prejudicial. The State emphasized the error by asking each individual veniremember to answer its hypothetical. It is quite probable that the consequences of the error are: (1) that the jury, before the presentation of evidence, already was committed to a verdict of guilty; and (2) that the State was freed of its responsibility to prove beyond a reasonable doubt that the appellant was driving. It is difficult if not impossible to determine the amount of weight that the jurors probably placed on the error. Finally, we steadfastly believe that if we declare the error harmless, it would encourage the State to repeat the practice of contracting with impunity.[14] Accordingly, we find that the error was harmful to the appellant and compromised the fairness of his trial. We sustain the appellant's first point of error.

### CONCLUSION

Having sustained appellant's first point of error, we need not reach his remaining points. We reverse and remand for new trial.

---

**14.** *Garza,* 963 S.W.2d at 929–30.