NO. 07-06-0127-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 24, 2006


______________________________


 

THE STATE OF TEXAS, APPELLANT



V.



1997 FORD EXTENDED CAB PICKUP


VIN: IFTDX17W7VKB79078 THREE THOUSAND


NINE HUNDRED AND EIGHTY-ONE DOLLARS (3,981.00), APPELLEE


_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 92,455-D; HONORABLE DON EMERSON, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 The State of Texas appeals the dismissal for want of prosecution of a suit for
forfeiture of a vehicle and cash brought under Chapter 59 of the Code of Criminal
Procedure. We dismiss the appeal for want of jurisdiction.

 The State seized the property at issue in July 2004 after a series of purchases of
controlled substances by undercover police officers. It filed its original petition in this action
in August 2004, and obtained personal service on one claimant and a default judgment
against her. The State obtained service on the second claimant by publication in April
2005, and an attorney was appointed for that claimant three months later. On December
5, 2005, the trial court set a hearing on the State's motion for judgment for January 24,
2006. 

 When the State's attorney failed to appear at the hearing, the trial court dismissed
the case the same day. The State sought reinstatement in a document entitled Motion for
New Trial in which counsel explained his failure to appear was due to his oversight in failing
to recognize a scheduling conflict. The court held a hearing on the motion February 15,
2006, at which the trial judge inquired into the calendaring procedures maintained by the
prosecutor's office. On being informed that the office did not maintain a central calendar,
the judge informed counsel he would grant the motion if counsel showed a central calendar
had been established in the following week. A March 13 letter from counsel recited his
efforts to comply with the court's directive but stated he had been unsuccessful. Counsel
also stated he had never previously missed a hearing and had been late only on one
occasion in thirteen years of practice.

 A reply from the trial judge the following day correctly characterized the motion for
new trial as a motion seeking reinstatement under Rule of Civil Procedure 165a. He
concluded his power to act on the motion was limited to a period of 30 days after the
dismissal and the expiration of that period precluded the grant of the State's motion.

 Rule of Civil Procedure 165a authorizes a trial court to dismiss a civil case for want
of prosecution when a party seeking affirmative relief fails to appear at a hearing or trial of
which the party had notice. See Alexander v. Lynda's Boutique, 134 S.W.3d 845, 850
(Tex. 2004) (applying rule).

 Rule 165a(3) governs reinstatement of the action when the dismissal is based on
the failure to appear. Clark v. Yarbrough, 900 S.W.2d 406, 408-09 (Tex.App.--Texarkana
1995, writ denied). That rule requires a timely motion to reinstate which sets forth the
grounds on which it is based and is verified. The verification requirement may not be
avoided by designating the motion as one for a new trial. City of McAllen v. Ramirez, 875
S.W.2d 702, 705 (Tex.App.--Corpus Christi 1994, no writ). A verified motion to reinstate
extends the trial court's plenary power. Polk v. Southwest Crossing Homeowners Ass'n,
165 S.W.3d 89, 95 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). An unverified
motion does not extend the trial court's plenary power or the time for perfecting appeal. 
Butts v. Capitol City Nursing Home, Inc., 705 S.W.2d 696, 697 (Tex. 1986). In the absence
of verification, the State's motion was not effective to extend the time for perfecting appeal
and its April 11, 2006 notice of appeal was untimely. Tex. R. App. P. 26.1. Our authority
on appeal is dependent on a timely notice of appeal. See Verburgt v. Dorner, 959 S.W.2d
615, 617 (Tex. 1997) (applying former rule). Accordingly, we dismiss the appeal for want
of jurisdiction.

 

 James T. Campbell

 Justice





eese, 2) knowing that
Rick Massey was attempting to find a gun with which to shoot Neese, 3) telling Massey to
use one of his (Massey's) own guns, 4) retrieving his (appellant's) own gun and handing
it to David Venable when Massey directed him to do so, 5) later obtaining a silencer he
(appellant) built to use with the weapon he delivered to Venable, 6) witnessing Brown and
Venable install the silencer on the weapon he obtained, 7) knowing that the weapon was
"about half loaded," 8) hearing others discuss how to dispose of Neese's body, 9) hearing
that Neese would arrive at the lake "before midnight," and 10) leaving since he "did not
want to be around during the shooting." (Emphasis supplied). Thus, from the context of
the utterance cited by appellant, we see that by the time he left for the evening he knew of
the intended shooting and provided the weapon to be used. See Means v. State, 955
S.W.2d 686, 692-93 (Tex. App.-Amarillo 1997, pet. ref'd untimely filed) (holding that a
defendant cannot dissect a record for words which may be rendered ambiguous when
taken from their context but rather evidence purportedly entitling a defendant to a lesser-
included offense must be viewed within its context). This is pivotal because what he may
have thought or intended when the group "started out" does not negate the effect of his
actions and knowledge when he departed the scene. Again, the State accused and tried
appellant as a party to the murder, and by the time he left the lake, appellant had
developed the requisite intent and committed the requisite acts to inculpate him as such. 
See Tex. Pen. Code Ann. §7.02(a)(2) (Vernon 2003) (defining a party as one who solicits,
encourages, directs, aids, or attempts to aid another person to commit the offense while
acting with the intent to promote or assist in the commission of the offense). In short,
because the tenor of the evidence at the time the murder occurred controls, see Solomon
v. State, 49 S.W.3d 356, 369 (Tex. Crim. App. 2001) (stating that whether the defendant
intended to kill the victim before the robbery took place matters not if the relevant liability
elements were established at the time the crime occurred), Gilchrest v. State, 904 S.W.2d
at 940 (stating that "the evidence at the moment of the attack and immediate departure was
all controlling"), and because by that time appellant had already secured the murder
weapon for Massey while knowing its intended use, whatever thoughts he may have
originally had about merely threatening Neese were of no probative value viz his
entitlement to an instruction on a lesser offense. 

 Nor can we say that the comment about his warning Neese if he "had known it would
have come to this" is of any consequence. This is so for several reasons. First, we have
no idea about what he meant when he used the word "this." The word could equally refer
to the murder of Neese, the fact of his arrest for that murder and the realization of the
potentially onerous nature of the accompanying ramifications, or the fact that he may have
felt remorse. And, because it could be any of those three things, if not others, then we
must conclude that the comment lacks probative value of anything. Hammerly Oaks, Inc.
v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997) (holding that evidence which can reasonably
be construed in two different and opposing ways is not evidence of anything). Second,
when placed in context, the utterance can hardly be interpreted as evidence illustrating a
want of knowledge about the purported shooting or intent to aid in that endeavor. Again,
before uttering it, appellant had already admitted to acquiring the gun and silencer. And
that he knew of their intended use is both clearly and indisputably exemplified by his
statement that he left the scene since he "did not want to be around during the shooting." 
Logic would not permit a juror to rationally conclude that appellant was unaware of the
intended shooting given that he left because he did not want to be at the shooting. 
Consequently, the passage at issue could only refer to his subsequent arrest, his
subsequent feelings of remorse, or something else, none of which negate his liability as a
party. 

 In sum, the evidence alluded to by appellant does not negate one or more elements
of his responsibility as a party for the greater offense of murder. Thus, it would not permit
a jury to rationally conclude that if he was guilty, it would be of only a lesser offense. 

Issue One - Extraneous Offenses


 We next consider appellant's first issue. Therein, he complains about the trial court's
admission of evidence regarding extraneous offenses. Purportedly, it was irrelevant, its
undue prejudice outweighed its probative value, and he was not accorded sufficient prior
notice of the State's intent to use the evidence. (1) Though he appears to suggest that the
extraneous offenses involved were many, the record excerpts he mentions allude only to
two examples. They pertained to comments by two witnesses about appellant buying
drugs from Neese and selling drugs to others. And, because it is not our obligation to
peruse through the record in search of instances where evidence of other extraneous
offenses may have been admitted, we limit our consideration of appellant's complaint to the
instances mentioned above. So too do we overrule the issue.

 As to the matter of prior notice, Texas Rule of Evidence 404(b) does obligate the
prosecutor to afford a defendant reasonable notice of its intent to introduce evidence of
other crimes, wrongs, and bad acts during its case in chief. This, of course, assumes that 
the defendant requests notification; should he not, then there is no duty to notify. 
Henderson v. State, 29 S.W.3d 616, 624 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd)
(holding that the requirement of notice applies only if the defendant makes a timely request
to the State); Webber v. State, 21 S.W.3d 726, 728 n.1 (Tex. App.-Austin 2000, pet. ref'd)
(holding that the record failed to show the defendant requested notice of intent to offer bad
acts into evidence). Here, we have failed to find in the record a request by appellant for
notice of extraneous offenses, and he has failed to direct us to any such notice. Therefore,
we cannot say that the State was under a duty to comply with Rule 404(b). 

 Furthermore, even if a request was made, we would have to reject appellant's
complaint given its tenor. That is, appellant contends that the State failed to comply with
Rule 404(b) because the notice did not mention any "specific bad act." Here, the State
included the following in its "Third Supplemental Discovery Compliance": "Defendant used
and possessed illegal narcotics, including cocaine and marihuana. Defendant would also
buy and sell those illegal narcotics." Next, the testimony mentioned in his brief and about
which he now complains encompassed one witness stating that appellant bought drugs
from Neese and another saying that appellant sold drugs to her. No specific transactions
were mentioned in either excerpt. By juxtaposing the testimony of the two witnesses with
the notice afforded by the State, one can reasonably conclude that the generality of the
State's disclosure comported with the generality of the testimony about which he
complains. Given this comparability and the generality inherent in the testimony at issue,
we reject the assertion that to be reasonable, the notice contemplated under Rule 404(b)
had to include information about specific acts or transactions. 

 As to the relevance of the evidence, we note that it provided a link in the chain of
motive. Simply put, the State endeavored to prove that appellant participated in the murder
to enhance his position in the drug trade. That is, he sought to take over the trade routes
being serviced by Neese. And, while motive may not be an element of murder, it
nonetheless reflects upon the mens rea of appellant as a party to murder. In other words,
the evidence provides support for the proposition that appellant aided in the murder of
Neese while acting with the intent to promote or assist in the murder. So, that appellant
bought and sold drugs was indeed relevant. See Tex. R. Evid. 404(b) (stating that
evidence of other crimes, wrongs, and acts is not admissible to prove the character of a
person in order to show action in conformity therewith, but may be admitted for other
purposes such as motive, preparation, plan or intent). 

 As to the prejudicial effect of the evidence substantially outweighing its probative
value, see Tex. R. Evid. 403 (stating that evidence, although relevant, may be excluded "if
its probative value is substantially outweighed by the danger of unfair prejudice . . . ."), we
cannot say that evidence of appellant's drug dealing took an inordinate amount of time to
develop, given the totality of the evidence presented. So, it had little likelihood of
distracting the jurors from assessing appellant's culpability for the indicted offense. Indeed,
given its tendency to prove motive and intent, one could reasonably conclude that it actually
served to focus the jury's attention on the underlying crime and why it occurred. And
though conviction was not utterly dependent upon its presentation to the jury (given the
testimony of Shad Brown and the statement of appellant inculpating himself), it nonetheless
helped place the murder within a framework easily understandable to the jury, i.e. that
appellant wanted Neese killed so he could take over. Given this, we cannot say that the
trial court's decision to admit the evidence despite appellant's Rule 403 objection fell
outside the zone of reasonable disagreement and, thereby, evinced an abuse of discretion. 
See Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (stating that
whether the trial court erred in admitting evidence depends upon whether its decision fell
outside the zone of reasonable disagreement and, therefore, constituted an abuse of
discretion).

 Next, and assuming arguendo that the trial court did err in admitting the evidence,
we would nevertheless find that the error did not affect any substantial right of the
appellant. See Tex. R. App. P. 44.2(b) (stating that any non-constitutional error must be
disregarded unless it affects substantial rights); see Avila v. State, 18 S.W.3d 736, 741-42
(Tex. App.-San Antonio 2000, no pet.) (noting that the erroneous admission of evidence
of extraneous offenses was not constitutional error). As discussed under the foregoing
issue, appellant was tried for being a party to murder. And, to the extent that the topics of
drugs and appellant's involvement therewith were developed, such evidence was relevant
to the issue of motive. At the very least, it, coupled with other evidence, tended to illustrate
a desire to eradicate Neese so he (appellant) could advance in the trade. Thus, there
existed a legitimate purpose underlying the State's effort to admit it, and the State was not
using the evidence simply as a way to invoke emotional reaction by the jury. See Motilla
v. State, 78 S.W.3d 352, 357-58 (Tex. Crim. App. 2002) (stating that when addressing
harm, the appellate court should consider, among other things, the character of the alleged
error and how it might be considered in connection with the other evidence).

 More importantly, appellant himself acknowledged in his brief that the testimony of
Shad Brown "was more then [sic] sufficient to establish the elements of the offense
charged," i.e. a party to murder. With that we cannot disagree. Brown amply described
how appellant not only helped plan the killing but also secured the weaponry to be used to
effectuate it, as did appellant himself. Consequently, the evidence of appellant's guilt as
a party to murder was and is more than overwhelming. See Motilla v. State, 78 S.W.3d at
358 (stating that the evidence of defendant's guilt is a factor to consider in assessing
harm).

 Furthermore, the punishment assessed was 35 years imprisonment. His conviction
for murder, the latter being a felony of the first degree, Tex. Pen. Code Ann. §19.02(c)
(Vernon 2003), could have resulted in a sentence of 99 years or life. Id. §12.32(a). Thus,
appellant having received a term well below the maximum allowable hardly suggests that
the evidence of his drug involvement influenced the amount of punishment levied,
especially given the extent of his involvement in the premeditated murder.

 In sum, and upon reviewing the entire record, we cannot say that admission of the
evidence in question had a substantial and injurious effect or influence on the verdict of
guilt or punishment assessed. See Hurrelbrink v. State, 46 S.W.3d 350, 356-57 (Tex.
App.-Amarillo 2001, pet. ref'd) (stating that a substantial right is affected when the error
had a substantial and injurious effect or influence in determining the jury's verdict). So,
even if it was error to admit it, the mistake was harmless. 

Issue Two - Voir Dire Question


 Via his second issue, appellant complains that the trial court erred in overruling his
objections to the State's voir dire question which attempted to commit the prospective
jurors to a specific set of facts. We overrule the issue.

 The two instances to which appellant objected are:

 [Prosecutor]: . . . Let me just - - Ms. Ashmore, if you found out, hey, there
was a real good reason that made a lot of sense that you could kind of
empathize with, like, hey, this guy sold drugs to this man's kids, you know,
ten-year-old, twelve-year-old - - doesn't really matter. You know, maybe he
shouldn't have done it, but you can sure see where he came from, right?


 Now would that be the same as, though - - I'm going to use you now, Mr.
Le[B]lanc. I apologize. Say Mr. LeBlanc just wanted a piece of the action,
wanted the money, wanted what the drug dealer had, wanted to take over the
deal. Do you see a difference there? 


 [Veniremember]: (No response).


 [Prosecutor]: I hope you do. If you don't, tell me. 


 [Defense Counsel]: I will object to that. That's an intent to commit the juror -
- perspective [sic] juror to a specific fact circumstance.


 The Court: Overruled.


* * *
 

 

 [Prosecutor]: Let me see if I can go about it this way: Mr. Procella, as I said,
is the brains of the operation. Mr. Procella, let's just say, for the purposes of
this hypothetical or this example, doesn't even drive the get away car. Let's
just say he never even sets foot out of his house, but we meet at his house. 
He sets it all up. He does the research. He goes down to the bank a few
times. He cases the place. He takes a few surveillance photos when they're
not looking. He finds out where the cameras are in the bank. He sits down,
diagrams the bank, does a little floor plan, and sits down with it and tells me
and Ms. Robichaux how we need to go about this and who the younger teller
is and who we need to target and all that.

 

 All right. He has encouraged us. He has aided us. He has helped us
commit this offense, yet he has never set foot outside his house. Under that
fact situation, who would agree that he is still, nonetheless, a party to this
bank robbery offense that Ms. Robichaux and I commit?


 [Defense Counsel]: Your Honor, we now renew our objection. That is a
specific question, and it's meant to commit the perspective [sic] jurors to a
specific fact circumstance. It's an improper hypothetical, also. 


 The Court: Okay. Overruled. 

 Next, authority prevents an attorney from committing a prospective juror to a verdict
based on a set of hypothetical facts. Allridge v. State, 850 S.W.2d 471, 480 (Tex. Crim.
App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). 
Furthermore, a question is of that ilk if it solicits a venireman to resolve or refrain from
resolving an issue on the basis of one or more facts contained in the question. Standefer
v. State, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001). However, one must remember that
jurors may be asked whether they can follow a particular, relevant law. Id. at 181. And,
litigants can pose questions to assess whether any potential juror would be unable to do
so. So, care must be taken in constructing a hypothetical that legitimately delves into the
possibility of disclosing basis upon which to challenge a juror while avoiding the inclusion
of facts unnecessary for that purpose. Id. at 182. With this said, we turn to the questions
before us. 

 With respect to the first, the State was explaining the effect of motive. While doing
so, it asked if the jurors discerned some difference between a situation wherein the motive
was to seek revenge for the victim having sold drugs to the defendant's children and
wherein the motive was to take over the victim's drug business. The State did not ask the
jurors whether they would resolve or refrain from resolving an issue based on those facts. 
Therefore, we cannot say that the State was asking for a commitment or that the trial court
abused its discretion in overruling appellant's objection to the question. 

 With respect to the second situation, the State was attempting to explain the law of
parties. Furthermore, the question did ask the venire members to resolve an issue based
upon a set of hypothetical facts. Thus, it could be said that the query sought a commitment
from them. Nevertheless, the State may rely on the law of parties to secure a conviction,
and potential jurors are challengeable for cause based upon an inability to abide by that
legal concept. Nichols v. State, 754 S.W.2d 185, 197 (Tex. Crim. App. 1988), cert. denied,
488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989), overruled on other grounds by
Butler v. State, 803 S.W.2d 125 (Tex. Crim. App. 1992). Therefore, the question was 
proper if it did not contain facts other than those necessary to establish the challenge for
cause. And, in that regard, appellant never informs us of the facts which he considers to
be unnecessary. 

 Yet, assuming that the question does contain irrelevant hypothetical facts, we would
nonetheless find the error harmless. See Paustian v. State, 992 S.W.2d 625, 628 (Tex.
App.-El Paso 1999, pet. ref'd) (applying Texas Rule of Appellate Procedure 44.2(b) to
determine the harm resulting from a litigant attempting to improperly commit a juror to a
hypothetical and finding that the appellant was harmed). Unlike the situation in Paustian,
the State here did not ask each member of the venire to respond to the hypothetical. Thus,
it was less likely to become ingrained within the minds of the veniremen through repetition. 
Additionally, the facts in the hypothetical posed by the State were utterly distinct from those
which were to be used to establish appellant's culpability for murder. Nor was the State
posing a hypothetical that effectively relieved the potential jurors from having to find the
existence of a particular element of the crime, again, unlike the situation in Paustian. And,
as to the relevance of the question, the State sought to determine whether anyone on the
venire disagreed with the law authorizing conviction as a principal though the defendant
may only have been a party. That was a permissible topic to cover, as noted above.
Moreover, by the time the hypothetical was posed, the State had already asked a similar
"robbery" question to the panel (wherein the prosecutor acted as the party). Appellant
objected neither to it nor a venireman's answer to it. Thus, exposure to the supposed taint
arising from the hypothetical now at issue already occurred without any complaint by the
appellant. Next, the question about which appellant complains was asked during the first
half of the State's rather long voir dire. Thus, the timing of the hypothetical was not such
as to allow the venire member to mentally linger on the subject. These indicia coupled with
those considered under issue two which weighed against a finding of harm are
determinative. Assuming that the question asked was improper, we conclude that it had
little to no influence or effect upon the verdict rendered or punishment levied.

 Having overruled each issue, we affirm the judgment of the trial court.


 Brian Quinn

 Justice


Publish. 
1. Appellant does not argue that the State failed to disclose its intent to use the evidence. He merely
contends that the disclosure by the State was not sufficiently specific.