Affirmed and Memorandum Opinion filed February 8, 2007








Affirmed and Memorandum Opinion filed February 8, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00044-CR

____________

 

DWAYNE ANDRE PIERSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 5

Harris County, Texas

Trial Court Cause No. 1303426

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Dwayne Andre Pierson, of
misdemeanor assault.  See Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon 2003).  The trial
court sentenced appellant to ten months= incarceration in
the Harris County Jail.  Appellant raises three issues on appeal.  In his first
and second issues, appellant contends the evidence is legally and factually
insufficient to support the jury=s finding that the
complainant suffered bodily injury.  In his third issue, appellant contends the
trial court asked an improper commitment question during voir dire.  We affirm.








Factual and Procedural Background

On May 14, 2005, Deputy Robbennolt of the Harris County
Sheriff=s Department
responded to a family disturbance call at an apartment complex on West Road in
Harris County.  Upon arrival, Robbennolt met with the complainant, Detra
Campbell-Nelson.  Robbennolt observed red marks on both sides of the
complainant=s neck, consistent with injuries caused by grabbing or
choking.  The complainant was very excited and appeared to have been crying. 
The complainant told Robbennolt that she and appellant were dating, and
appellant had come to her apartment that evening.  The complainant stated that
she asked appellant to leave because he had been drinking.  The complainant
further stated that appellant became angry, pushed complainant into a chair,
grabbed her throat with one hand, and covered her mouth and nose with his other
hand.  The complainant also told Robbennolt that appellant=s actions caused
her extreme pain.

On May 16, 2005, appellant was charged by information with
assault.  On June 6, 2005, the complainant executed an affidavit of
nonprosecution.  In her affidavit, the complainant stated she did not want to
see appellant prosecuted for assault or testify against appellant at his trial.


Appellant=s case was tried on November 28 and 29,
2005.  Deputy Robbennolt and the complainant were the only witnesses to
testify.  Robbennolt testified he was dispatched to the complainant=s residence at
10:00 p.m. on May 14, 2005 and arrived at 11:06 p.m.   Robbennolt testified the
complainant made the following statements to him when he arrived:

 She told me that - - basically, that her boyfriend
came over that night.  He had been drinking.  She did not want - - she had a
child.  The child was in the apartment at the time that I was talking to her. 
She stated that she does not let anybody around her child when they have been
drinking.  She stated, at that time, that he became angry, started yelling.








Then she asked him
to leave.  He refused, grabbed ahold [sic] of her - - or before he grabbed her,
he poked her in the temple with his finger, knocking her into a chair that was
in the living room. When she fell in the chair, he got on top, grabbed ahold
[sic] of her around the throat, and put his other hand around her mouth and
nose.  She stated that she felt a lot of pain from this happening. 

Robbennolt testified that when he first observed the
complainant she was crying, and her demeanor was nervous and fearful. 
Robbenolt testified he saw marks on the complainant=s neck consistent
with someone grabbing or choking her.  Robbennolt gave the following testimony
describing the marks on the complainant=s neck:

The marks were - - when I first
observed them, red in color.  Like a - - close to a blood bruise, where the
blood came to the surface, but was not oozing out of the wound itself. . . .
The marks were on both sides of her neck.  I would say, probably, just less
than halfway around the neck, consistent with a hand print that were - - looks
as if it were a scrape mark or a pull mark - - that were tight against the skin
that would leave, like, a stretched red mark going toward the throat toward the
Adam=s apple.  They
were red.  They weren=t bleeding; but they had the appearance of
a shiny look, as if they were new.           

Robbenolt further testified he has dealt with assault victims
on many prior occasions.  Based on his training and experience, Robbenolt
concluded that the marks on the complainant=s neck were
consistent with her statement that she had been assaulted by appellant. 
Robbennolt testified he obtained a written statement from the complainant on
May 14, 2005, which was consistent with her oral statement that she was
assaulted by appellant.[1]
Robbennolt also testified he was dispatched to the complainant=s residence on or
about May 16, 2005, and was told by the complainant that she had not been
assaulted by appellant on May 14, 2005. 








The complainant testified during the State=s case in chief. 
The trial court limited the scope of the complainant=s testimony, based
on her representation that certain lines of questioning would cause her to give
conflicting statements under oath.  On direct examination, the complainant
identified appellant as the person who was the subject of her statement to
Robbennolt on May 14, 2005.  On cross-examination, the complainant testified
she did not receive any medical care on May 14, 2005.  The complainant further
testified that she and appellant are currently engaged to be married.  

The jury found appellant guilty of assault, and the trial
court sentenced appellant to ten months= confinement in
the Harris County Jail.  This appeal followed.

Discussion

I.        Legal
Sufficiency

In his first issue, appellant contends there is legally insufficient
evidence to sustain the jury=s finding that the complainant suffered
bodily injury.  In a
legal sufficiency review, we view all the evidence in the light most favorable
to the verdict and determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Salinas
v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the
sole judge of the credibility of the witnesses, is free to believe or
disbelieve all or part of a witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We do not engage in a second
evaluation of the weight and credibility of the evidence, but only ensure the
jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

  A person commits assault if he intentionally, knowingly,
or recklessly causes bodily injury to another, including the person=s spouse.  Tex. Penal Code Ann. ' 22.01(a)(1)
(Vernon 2003).  ABodily injury@ means physical
pain, illness, or any impairment of physical condition.  Tex. Penal Code Ann.  1.07(8) (Vernon
2003).  The Court of Criminal Appeals has broadly interpreted the definition of
bodily injury to include Aeven relatively minor physical contacts so
long as they constitute more than mere offensive touching.@  Lane v. State,
763 S.W.2d 785, 786 (Tex. Crim. App. 1989). 








When considering whether there is sufficient evidence to
establish that a victim suffered bodily injury, juries are free to apply common
knowledge, observation, and experience gained in ordinary affairs of life,
while giving effect to inferences that may reasonably be drawn from the
evidence.  Wawrykow v. State, 866 S.W.2d 96, 99 (Tex. App.CBeaumont 1993, no
pet.).  A fact finder may infer that a victim actually felt or suffered
physical pain because people of common intelligence understand pain and some of
the natural causes of it.  Id.; Goodin v. State, 750 S.W.2d 857,
859 (Tex. App.CCorpus Christi 1988, pet. ref=d).

In the instant case, appellant contends there is legally
insufficient evidence of bodily injury because the complainant did not testify
that she suffered pain, and because Deputy Robbennolt had no personal knowledge
of the events concerning the assault case.  We disagree.  Robbennolt gave
detailed testimony regarding the complainant=s appearance and
the red marks on her neck, which, in Robbennolt=s opinion, were
consistent with assault.  Robbennolt further testified that the complainant
specifically told him that appellant=s actionsCchoking her with
his hand around her neck, covering her mouth with his hand, and striking her in
the temple with his fingerCcaused her pain.

When
viewed in the light most favorable to the verdict, we find the evidence
supports a determination beyond a reasonable doubt that the complainant
suffered bodily injury.  See Harris v. State, 164 S.W.3d 775, 785 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (finding legally and factually
sufficient evidence of bodily injury where victim had reddish marks on her neck
and a scratch on her collarbone).  Accordingly, we overrule appellant=s legal sufficiency point of error.

 II.      Factual
Sufficiency








In his second issue, appellant contends there is factually
insufficient evidence to sustain the jury=s finding that the
complainant suffered bodily injury.  In a factual sufficiency review, we consider all the evidence
in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App.
1997).  The evidence may be factually insufficient in two ways.  Prible v.
State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  First, when considered by
itself, evidence supporting the verdict may be so weak the verdict is clearly
wrong and manifestly unjust.  Id.  Second, where the evidence both
supports and contradicts the verdict, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been met.  Id. 
In conducting a factual sufficiency review, we must employ appropriate deference
so that we do not substitute our judgment for that of the fact finder.  Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  Our analysis must
consider the evidence appellant claims is most important in allegedly
undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).

Turning to the first basis on which we may reverse, we find
that the testimony of Deputy Robbennolt, recounted above, provides factually
sufficient evidence to support the jury=s finding that the
complainant suffered bodily injury.

 Appellant directs us to the following evidence which he
claims is contrary to the jury=s finding that the complainant suffered
bodily injury: (1) Robbennolt=s testimony that the complainant contacted
him prior to appellant=s trial and stated that appellant did not
assault her, (2) Robbennolt=s testimony that the complainant refused
medical treatment, (3) Robbennolt=s testimony that
he had no photographs of the complainant=s neck, and (4)
the absence of testimony by the complainant regarding the issue of pain.  When
considering all the evidence in a neutral light, we find that the contrary
evidence is not so strong that the beyond-a-reasonable-doubt standard could not
have been met, nor is the evidence supporting the verdict so weak it is clearly
wrong and manifestly unjust.  See Prible, 175 S.W.3d at 730B31.  Accordingly,
we overrule appellant=s factual sufficiency point of error.

III.      Voir
Dire








In his third point of error, appellant contends the trial
court abused its discretion by asking an improper commitment question to
prospective jurors during voir dire.  Specifically, appellant argues the trial
court used a hypothetical fact situation which was identical to the evidence
introduced at trial, thereby committing prospective jurors to an issue in the
case.  The State argues appellant failed to preserve this issue for our
review.  In the alternative, the State argues the trial court=s hypothetical was
not an improper commitment question because it was intended to explain the
law.  

A. The Facts

During voir dire, the prosecutor asked the following
question which sought to determine whether venire members could find a
hypothetical defendant guilty of assault if the victim had no visible physical
injuries:

What do you think is required to show bodily injury? . . . You=d be surprised.  The law just requires pain.  You have
to show that the person felt pain.  Doesn=t
require a scratch.  Doesn=t require a bruise.  Doesn=t require any kind of mark.  I just have to prove to
you that the person (Pointing) felt pain.

How many of you - - considering this is the charge I have to prove,
that these are the things that happened; but as far as serious bodily injury,
the only thing that I=m required to show is that person=s - - they felt pain.  How many of you think - - Hum,
in an assault case, if there were no bruises and, you know, I do believe she
felt pain.  I believe beyond a reasonable doubt she or he felt pain, but you
don=t have any bruises, you don=t have any marks, she didn=t spend any time in the hospital - - how many of you
could find a person guilty if you believe beyond a reasonable doubt she felt
pain but there were no bruises?  

After eight venire members responded to the prosecutor=s question, the
trial court intervened and made the following statements:

When the question
is posed, it=s that you believe beyond a reasonable doubt the
testimony that the contact caused pain.  It=s no longer a
question of deciding whether you believe that it caused pain.  Okay?  You might
be looking for a mark to see if you believe it caused pain; but let=s say that you=ve already
resolved that question in your mind and you believe beyond a reasonable doubt
that the contact caused pain, which is all that the law requires.  Would you,
then, follow that part of the law and find the defendant guilty; or would you,
instead, find the defendant not guilty, even though you believed that the State
proved everything they have to beyond a reasonable doubt?  You see the
distinction that I=m pointing out?  








Eleven additional venire members responded to the
prosecutor=s question,[2]
then the following exchange took place: 

Venireperson No. 20:           Just
him assaulting her is not enough?

The Prosecutor:                     No.  In order to
be guilty of assault under the law, I have to prove to you that he
intentionally  - - Adid intentionally and knowingly cause bodily injury.@  Bodily injury is just a fancy term for Acaused pain.@ 
So, I have to show that Ahe intentionally and knowingly caused pain.@  If I can=t
prove that they caused pain to the person, no assault.

 

Venireperson  No. 20:          Wouldn=t bodily injury be like if she went and had x-rays and
there was some film showing bruising after the incident or . . .

 

The Prosecutor:                     Bruising after the
incident - - generally, if there=s
bruising, there=s pain. So, it=s
really weird, but pain is a prerequisite to the bodily injury.  

 

The Court:                              I=m going to plug through again.  Excuse me.  Okay.  Let=s try this: What if I went wacky suddenly and I
marched right out there and I slapped Ms. Lugo? I just slapped her cold, right
across the face.  But I=m not real strong so by the time the police arrived,
any mark is gone.  But she says - -

 

Defense Counsel:                  Judge, I=m going to object to the hypothetical as getting into
the evidence in the case beyond the Court=s -
- 








The Court:                              I don=t know your case.  So, I don=t know.

 

Defense Counsel:                  I=m going to object to that statement by the Court.

 

The Court:                              Thank you. 
Okay.  So, you hear that evidence; and you believe beyond a reasonable doubt
the testimony that it hurt.  Or let=s
try another one. . . . 

B. Standard of Review

The trial court has broad discretion over the process of
selecting a jury.  Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App.
2002); Allridge v. State, 762 S.W.2d 146, 167 (Tex. Crim. App. 1998). 
Therefore, we will not disturb the trial court=s ruling on the
propriety of a particular question during voir dire absent an abuse of
discretion. Barajas , 93 S.W.3d at 38; Allridge, 762 S.W.2d at
163. 

C. Analysis

Assuming, without deciding, that appellant preserved error
on the commitment issue, we conclude that the trial court=s hypothetical was
not an improper commitment question.  In Standefer v. State, the Court
of Criminal Appeals articulated a three-prong test for determining whether a
voir dire question calls for an improper commitment.  59 S.W.3d 177, 179B82 (Tex. Crim.
App. 2001).  The first prong of the test requires trial courts to determine
whether a particular question is a commitment question.  Id. at 179.  If
the court determines that a particular question is a commitment question, then
the court must decide whether the question gives rise to a valid challenge for
cause.  Id. at 181B82.  If the question meets the Achallenge for
cause@ requirement, then
the court must determine whether the question includes only those facts
necessary to determine whether a prospective juror is challengeable for cause. 
Id.  A commitment question is proper if gives rise to a valid challenge
for cause and includes only those facts necessary to determine whether a juror
is challengeable for cause.  Id.








1. Did the Trial Court Ask a Commitment Question?

A commitment question is one that commits a prospective
juror to resolve, or refrain from resolving, an issue a certain way after
learning a particular fact.  Id. at 179.  The hypothetical question
asked by the trial judge and objected to by appellant=s trial counsel
included the following facts: the trial judge slapped Ms. Lugo in the face, the
venire members believed beyond a reasonable doubt that Ms. Lugo suffered
physical pain, and, by the time the police arrived, all marks were gone. 
Viewed in context, the trial court=s hypothetical
sought to determine whether venire members could find a person guilty of
assault under the facts of the hypothetical.  Therefore, the trial court=s hypothetical was
a commitment question because it sought to determine whether prospective jurors
would Aresolve, or
refrain from resolving, an issue a certain way after learning a particular
fact.@  Id.

2. Would One of
the Possible Answers to the Question Lead to a Valid Challenge for Cause? 








For a commitment question to be proper, one of the possible
answers to the question must give rise to a valid challenge for cause.  Id.
at 182.  The statute under which appellant was charged requires the State to
prove that the victim experienced physical pain.  See Tex. Penal Code Ann. '' 1.07(8),  22.01(a)(1).  One possible response to the trial
court=s hypothetical is
that a venire member would not convict a defendant of assault, even though the
venire member believed beyond a reasonable doubt that the victim experienced
physical pain (without visible physical injury) as a result of being
intentionally slapped.  A prospective juror who would require the State to meet
a higher burdenCsuch as evidence of a visible physical
injuryCwould be subject
to a challenge for cause, since that juror would require the State to prove a
fact that the statute does not require.[3] 
See Tex. Code Crim. Proc. Ann.
art. 35.16(b)(3) (Vernon Supp. 2006). Accordingly, the trial court=s hypothetical
satisfies the challenge-for-cause requirement under the second prong of the Standefer
analysis.  See Standefer, 59 S.W.3d at 181B82. 

3. Did the
Question Include Only the Necessary Facts? 

Even if a commitment question meets the challenge-for-cause
requirement, the question may be improper if it includes facts in addition to
those necessary to sustain a challenge for cause.  Id. at 182.  The Standefer
court referenced the facts of  Atkins v. State as an example of a voir
dire question which impermissibly supplied more facts than necessary to sustain
a challenge for cause.  Id.  In Atkins, the State asked
prospective jurors the following question: AIf the evidence,
in a hypothetical case, showed that a person was arrested and they had a crack
pipe in their pocket, and they had a residue amount in it, and it could be
measured, and it could be seen, is there anyone who could not convict a person,
based on that-@ Atkins v. State, 951 S.W.2d 787, 789 (Tex.
Crim. App. 1997).  In Atkins, the facts in the State=s hypothetical
question were identical to the evidence introduced at trial.  Id. at
790.  The Atkins court held that the State=s question was
improper because it served no purpose other than to commit the venire members
to the facts of the case.  Id. AThe key to
understanding Atkins and the third prong of Standefer is
that the hypothetical used by the State in Atkins contained too many
case-specific facts.@ Lee v. State, 176 S.W.3d 452, 461
(Tex. App.CHouston [1st Dist.] 2004), aff=d, 206 S.W.3d 620
(Tex. Crim. App. 2006) (holding voir dire question was not improper under the
third prong of Standefer because the non-case-specific facts included in
the question Awere necessary for the hypothetical question to be
useful in ascertaining the views of the prospective jurors on an issue
pertinent to the fair determination of the case@).








In the instant case, the trial court=s hypothetical
contained none of the facts ultimately adduced at trial.[4] 
All of the cases cited by appellant as controlling authority are
distinguishable on this basis.[5] 
Further, the purpose of the trial court=s hypothetical was
to explain the law of assault and determine whether prospective jurors could
apply it correctly.  See Atkins, 951 S.W.2d at 789 (ABecause the law
allows the use of a hypothetical to ascertain the views of prospective jurors
on issues pertinent to a fair determination of the case, it must be determined
whether the hypothetical was used to explain the law or was used to commit the
jurors to particular circumstances.@).  The facts
included in the trial court=s hypothetical were intended to explain
the law, and were not specific to appellant=s case. 
Therefore, the trial court=s hypothetical question did not contain
unnecessary facts under the third prong of the Standefer analysis.  See
Standefer, 59 S.W.3d at 182; Atkins, 951 S.W.2d at 789B90; Lee,
176 S.W.3d at 461.  

Accordingly, the trial court=s hypothetical was
not an improper commitment question, and appellant=s third issue is
overruled.

 

 

 

 

 

 








Conclusion

Having considered and overruled each of appellant=s three issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion
filed February 8, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The written statement given by the complainant on
May 14, 2005 was not offered into evidence.





[2]  The venire consisted of twenty prospective jurors.





[3]  Article 35.16(b)(3) provides that the State may
challenge a venire member for cause if Ahe
has a bias or prejudice against any phase of the law upon which the State is
entitled to rely for conviction or punishment.@ Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (Vernon Supp. 2006). 





[4]  In the trial court=s hypothetical, the judge slapped Ms. Lugo in the face, and, by the
time the police arrived, any mark was gone.  In contrast, Deputy Robbennolt
gave detailed testimony at trial describing the marks he observed on the
complainant=s neck after arriving at her
residence.  Further, the victim in the trial court=s hypothetical was slapped;
whereas, the complainant in the case at bar was pushed into a chair and
choked.  





[5]  Appellant cites three cases as controlling authority
on this issue, all of which involve commitment questions containing facts
peculiar to the case on trial.  See Atkins v. State, 951 S.W.2d 787, 790
(Tex. Crim. App. 1997) (analyzing Aimproper
question in which the hypothetical was used seeking to commit the veniremembers
to the specific facts of the case@); Brown
v. State, 674 S.W.2d 443, 447 (Tex. App.CDallas
1984), aff=d, 741
S.W.2d 453 (Tex. Crim. App. 1987) (holding trial court correctly disallowed
voir dire question Abecause it would have improperly brought forth a fact
peculiar to the case@); White v. State, 629 S.W.2d 701, 706 (Tex.
Crim. App. 1981) (AThere was no error in refusing to let the appellant
ask a hypothetical question that was based on the facts peculiar to the case on
trial.@).